## THE WESTERN HORSE AND CATTLE INSURANCE COMPANY, PLAINTIFF IN ERROR, V. WILLIAM SCHEIDLE, DEFENDANT IN ERROR.

1. **Insurance**: TITLE TO PROPERTY INSURED. A policy of insurance is *prima facie* an admission by the insurers of the title of the insured to the property embraced in the policy.

2. **Petition** examined, and *Held,* Good when assailed after verdict.

3. **Insurance**: WAIVER OF PREMIUM. An insurance company may waive the payment of the premium after it is due. And when it is provided in the note given for the premium that if the note be not paid at maturity the company shall have the right to cancel the policy, the failure to cancel it will be deemed a waiver of such right, and in case of loss payment will be enforced. And especially would this be true if payment of the premium was received (even after the loss and without knowledge thereof) and the money held until after suit brought.

ERROR to the district court for Lancaster county. Tried below before POUND, J.

*Webster & Stewart* and *Charles Ogden*, for plaintiff in error, cited: *Johnson v. Van Epps*, 14 Ill. App., 214. *Bishop v. Clay F. & M. Ins. Co.*, 49 Conn., 174. *Mutual Benevolent Association v. Hoyt*, 46 Mich., 478. *Rombach v. Reid and Arl. L. Ins. Co.*, 35 La Ann., 234. *Smith v. Ross*, 51 Mich., 117. *Davis v. German Ins. Co.*, 135 Mass., 255. *Schoneman v. Ins. Co.*, 16 Neb., 406.

*A. K. Webster*, for defendant in error, cited: *Joliffe v. Madison Ins. Co.*, 39 Wis., 111. *Phœnix Ins. Co. v. Lansing*, 15 Neb., 495. *Schoneman v. Ins. Co.*, 16 Neb., 406, and cases cited.

REESE, J.

This cause was tried in the district court upon the following stipulation or agreed statement of facts:

" 1st. That on the 5th day of June, 1883, the defendant issued and delivered to plaintiff its policy of insurance, No. 6858, the same being hereto attached marked 'A' and made a part of this stipulation, insuring plaintiff against loss on one sorrel gelding in the sum of $125.00, and on one bay horse, $75.00.

" 2d. That plaintiff gave his note for the premium, said note being hereto attached marked 'B' and made a part of this stipulation.

"3d. That before the expiration of said policy of insurance, but after said premium note was due and unpaid, defendant placed said note in the hands of an attorney for collection. That said attorney gave plaintiff notice that said note was in his hands for collection, which notice is hereto attached marked 'C' and made a part of this stipulation.

" 4th.  That on the 15th day of March, 1884, the plaintiff paid said note and interest thereon to said attorney, and said attorney remitted the same to the defendant within one week thereafter less collection fees, and that plaintiff did not disclose to said attorney the fact that the said sorrel horse had died on the day previous.

" 5th.  That said sorrel gelding died on the 14th day of March, in the afternoon of said day, about three o'clock P.M., and without fault or neglect on the part of this plaintiff.

" 6th.  That plaintiff gave the defendant notice of said loss as soon as he could find the agent of said company, and within six days after said loss.

" 7th.  That more than forty-five days before the commencement of this action plaintiff gave defendant proof of said loss on blanks furnished by defendant as required in said policy.

" 8th.   That said horse, said sorrel gelding, was of the value of $150.00; that defendant refused to pay the sum of $125.00, and has not paid the same nor any part thereof.

" 9th.  Plaintiff has performed all other conditions of said policy by him to be kept and performed, except as negatived by this stipulation.

" 10th.  It is further stipulated that after defendant was served with summons, and before this cause was tried in justice court, defendant tendered the premium paid by plaintiff for insurance on said sorrel gelding from the time said note was due to the expiration of said policy to plaintiff, with interest and costs to that date thereon, and is now ready to pay the same, and brings the same into court and makes said tender good.

" The above are stipulated to be the facts of the cause so far as competent or material.

"Signed, &c."

It is not necessary to set out copies of exhibits attached to the stipulation, further than to say the note referred to

32

as exhibit "B" is a negotiable promissory note with condition that in case of loss the note should become due and be deducted therefrom; and that in case of the non-payment of the note at maturity "the company shall have the right to cancel the policy, but at their option may revive it after full payment of principal, interest, and charges have been made."

The court found in favor of defendant in error, whereupon a motion for a new trial was made upon the grounds that:

"1st. The pleadings of the cause will not support a judgment.

"2d. That upon the issues joined defendant is entitled to a judgment for costs, and that plaintiff's action be dismissed.

"3d. Because judgment was rendered in favor of the plaintiff, whereas upon the pleadings and facts defendant was entitled to judgment upon the law and issues joined.

"4th. Because the court admitted the stipulation of facts to be considered in evidence, to which defendant at the time objected and excepted because the petition of plaintiff did not entitle him to adduce any evidence in the cause."

This motion being overruled and judgment entered, plaintiff in error seeks a review.

There are two principal and decisive questions in this case, to-wit: *First*, Whether or not the petition is sufficient to sustain the judgment; and, *Second*, If so, whether the defendant in error could rightly recover under the stipulated facts.

The petition alleges in substance that defendant is an incorporated insurance company. That on the 5th of June, 1883, in consideration of the covenants performed by the plaintiff it issued and delivered to him the insurance policy, a copy of which is attached to the petition. That the gelding horse insured in said policy for $125.00 died on the 14th day of March, 1884, and that said death was not

caused by the fault, neglect, or procurement of the plaintiff in the action, and that of all of which defendant, plaintiff in error, had due notice.    That on the 28th of March, 1884, proof of loss was served on the company, and that the horse was worth $150.00, and that plaintiff has kept all the conditions of the policy which he was required to keep and perform.    That defendant company has not paid and will not pay the said sum of $125.00, nor any part of it, to his damage in that sum.    The answer admits the incorporation of the company and the issuance of the policy as alleged, and denies all other allegations.

The objections to the petition will be noticed in the order presented by the brief of plaintiff in error, the first of which is, that there is no allegation that at the time of the issuance of the policy the defendant in error was the owner of the horse insured or had any interest in him.    The policy is attached to the petition and its recitals are made a part of it.    In this policy it is said that the company does insure William Scheidle against loss by accident, etc., to the property described.    This showed the interest of defendant in error.    *Ins. Co. v. Slaughter*, 20 Ind., 526. The mere fact of the contract of insurance being effected should, we think, be enough *prima facie* to prove the ownership of the property.    If the contract was procured by fraud, and such ownership did not exist, or if the insurance was simply a wager policy, it was proper matter of defense, and if relied upon should be pleaded as a defense. The same may be said of the second objection, that it is not alleged that defendant in error was the owner of the horse at the time of his death.

The third objection is, that it is not alleged that any consideration was given for the issuance of the policy.    We think it is substantially so alleged.    It is alleged that the policy was issued in consideration of the covenants performed by the plaintiff, and the policy itself, which is embodied in the petition, shows upon its face and acknowledges the payment of the premium.

The fourth and fifth objections are, that there is no aver-ment that payment has been demanded or that any sum is or has been due plaintiff on the policy. As to the de-mand, it would seem clear that the proof of loss "on blanks furnished by defendant's agent," with the allegation that plaintiff in error " would not pay said sum of $125 nor any part thereof," is a sufficient allegation of demand if such allegation were necessary. While it is true that the petition was not drawn with that degree of care usually deemed necessary by a careful and skillful pleader, yet we think it fully appears from the petition that the amount claimed is due. The contract is set out at length. The alle-gation of compliance with its terms on the part of defend-ant in error, the failure of plaintiff in error to pay, and the damage resulting is stated. The objection being made for the first time after judgment, the petition will be upheld if by any reasonable construction it is found sufficient. Other objections of a general nature are made to the petition, but upon an examination of all the allegations it is deemed sufficient.

The next question presented is as to the right of defend-ant in error to recover upon the facts as agreed to in the stipulation; the note given for the premium not having been paid until after the death of the insured property.

By reference to the note, a copy of which is attached to the stipulation, it may be seen that the non-payment of the amount for which it was given does not terminate the policy, the provision being as follows: "If this note be not paid at maturity the company shall have the right to cancel the policy, but, at their option, may revive it after full payment of principal, interest, and charges has been made." By this provision it is apparent that the vitality of the policy did not necessarily depend upon the payment of the note. Plaintiff in error had the right, if it so elected, to terminate the contract of insurance, but in order to do so an affirmative act upon its part was necessary.

So long as it insisted upon the payment of the note and declined to cancel the policy, so long its obligations continued. Had suit been brought upon the note its collection could not have been successfully resisted. The policy continued in force until canceled. It never was canceled. The right to cancel was waived. *Schoneman v. Ins. Co.*, 16 Neb., 404, and cases there cited. Also *Heaton v. Ins. Co.*, 7 R. I., 502. *Goit v. Ins. Co.*, 25 Barb., 189.

It is insisted that the payment of the note to the attorney in whose hands the note was placed for collection, without making known to him the fact of the death of the property, was an act of bad faith, and that the tender of the money back, after suit brought, should relieve the company from any liability. To this it may be answered, the note matured on the 27th day of July, 1883, and plaintiff might have terminated its liability had it seen proper to do so. The note was paid on the 15th day of March, 1884. Notice and proof of loss was given and made more than forty-five days before the commencement of this action, yet plaintiff in error held the money until after the commencement of the action, thus treating the contract of insurance as binding until the service of summons.

It may be, and is perhaps true, that the loss hastened the payment of the note, yet the payment not being essential to the life of the policy, its payment or non-payment would not change the rights of the parties.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.